CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ZACHARY M. GLIMCHER (CABN 308053)
Special Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
Zachary.Glimcher@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AN DUY DAO,<br><br>Defendant. | Case No. CR 25-0390-HSG<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM**<br><br>Sentencing Date: October 7, 2026<br>Sentencing Time: 2:00 p.m.<br><br>Before: Hon. Haywood S. Gilliam Jr. |

## INTRODUCTION

The defendant, An Duy Dao, deserves time in custody but needs time on supervised release. The defendant committed the offense of being a felon in possession of a firearm while he was on probation for a prior conviction involving similar conduct, and he was arrested and charged with similar conduct after the instant offense. The defendant's pattern of being a prohibited person in possession of a firearm dates back over 20 years.

In light of the 3553(a) factors, the government recommends a custodial sentence of 40 months, the longest sentence the defendant has received. Additionally, the defendant clearly needs help staying out of trouble, and the government believes 3 years of supervised release will help to facilitate a different outcome after the defendant is released than has happened in the past.

## BACKGROUND

### A. The Offense

On March 1, 2023, Oakland Housing Authority ("OHA") officers approached a vehicle parked illegally in front of one of their buildings near the 1800 Block of 11th Ave. PSR ¶7. After inspection, they determined the vehicle had been reported stolen. *Id*. The vehicle was parked near the street, and OHA had surveillance cameras to watch portions of an off-street parking lot. *Id*. They watched an individual, later identified as Don Capers ("Capers") exit unit #18, and as he approached the vehicle parked in the front, OHA approached him. OHA officers continued to watch both the front area where the stolen vehicle was parked as well as the off-street parking lot. *Id*. Contemporaneous with their detention of Capers, officers observed a black Mercedes drive into the off-street parking lot and back into a spot in front of unit #18. Dkt. 21 at 3. After determining Capers was in possession of a stolen vehicle, he was arrested and taken away from the scene. PSR ¶8.

After parking, the passenger of the Mercedes exited and went into Unit #18. PSR ¶8. The driver remained and interacted with a male and female who approached the vehicle, separately, and interacted with him. *Id*. Meanwhile, an OHA officer remained in his vehicle in the front, keeping an eye on the parked stolen vehicle until a tow truck arrived. *Id*. Over the radio, he heard from the officer driving Capers to the station say, "[Capers] is advising the male in the Mercedes is known as Waldo, possibly dropping off crystal meth, and is known to be Code 7 (armed)." *Id*.

That information was overheard by officers still at the scene. *Id*. The lieutenant told the officer in the front to partially block the exit and intercept the Mercedes if it tried to leave. *Id*. The officer pulled his vehicle into position and performed a traffic stop on the Mercedes. *Id*. Based the information they had just received over the radio, the defendant was detained, and when asked if he had any weapons on him, the defendant admitted to having a firearm on him. *Id*. Officers recovered a Glock 30 .45 caliber pistol, serial number CLY164, that was loaded with 11 live rounds of .45 caliber ammunition. Additionally, officers located an extended large-capacity magazine loaded with 22 rounds of .45 caliber ammunition. PSR ¶ 9.

### B. Procedural History

On November 13, 2025, a grand jury returned an indictment charging the defendant with two

counts of being a felon in possession of a firearm and/or ammunition, in violation of 18 U.S.C. § 922(g)(1). Dkt. 1.

On July 15, 2026, the defendant pled guilty to Count One, and sentencing was set for October 7, 2026, at 2:00 pm.

## ARGUMENT

### A. The PSR Accurately Calculated the Offense Level and Criminal History Category

The government agrees that the defendant has 22 criminal history points and therefore is a Criminal History Category (CHC) VI. For the instant offense, the base offense level of is 20. U.S.S.G § 2K2.1(a)(4)(B)(i) and (ii). When adjusted for acceptance of responsibility, under §§ 3E1.1(a) and (b), the total offense level of 17. With a CHC of VI and a total offense level of 17, the advisory guidelines here are 51-63 months.

### B. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* The government agrees with Probation's calculation that the defendant's total offense level is 17, and his criminal history category is VI. PSR ¶¶ 25, 47. After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *United State v. Carty*, 520 F.3d 984 at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) to provide the defendant with needed educational or vocational training, medical

care, or other correctional treatment in the most effect manner

(5) the need for the sentence to protect the public from future crimes of the defendant; and

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

**C. Recommended Sentence and 3553(a) Factors**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 40 months to be followed by a three-year term of supervised release. The custodial recommendation represents a variance from the guideline range.

This recommendation takes into account the defendant's history and characteristics. Born in Hong Kong, to Vietnamese parents fleeing the communist regime, the defendant is now effectively stateless. PSR ¶¶63-64. Although his parents appeared to do all they could to achieve and maintain family cohesion, stability, and a healthy upbringing, the defendant grew up without much and was exposed to crime and gun violence. PSR ¶¶65-66. Indeed, his father was robbed and killed in 2005. PSR ¶63. He has four siblings, who all live in the Bay Area, all of whom regularly communicate with the defendant, and all of whom appear to have stable lives (PSR ¶63), notwithstanding having similar upbringings to the defendant who has chosen a criminal life.

This recommendation also accounts for the defendant's criminal history and the need to recognize the seriousness of this offense which the defendant has committed repeatedly. The defendant's reasons for carrying a firearm center on situations in which he believes he would need to use it. This way of thinking needs to be deleted from his decision-making calculus.

In accepting responsibility, the defendant seems to recognize the ongoing tension between knowing he should not have guns and believing he needs one for protection. PSR ¶13. From the historical pattern of his unlawful firearm possession, it is unclear whether this was a true revelation sparking a turning point, or something he has told himself each time he is caught with a firearm.

What is clear is the need to specifically deter this defendant in order to protect the public, and the government's recommendation, if adopted, will accomplish that and also serve as a model for general

deterrence against prohibited individuals from possessing firearms. This is the longest custodial sentence this defendant has received, so this recommendation is to hold the defendant to his word that he will not possess a firearm again. Though not convicted by the state, the defendant already spent approximately nine months in jail for this offense. Combined with the government's recommendation, it is largely consistent with similarly situated defendants, as well as his Guidelines range, thereby avoiding unwarranted sentencing disparities. PSR ¶107.

Finally, as mentioned at the outset, the defendant needs the resources and structure available through supervised release. In addition to punishment as a deterrent to recidivate, supervised release is designed to reintegrate individuals into the community post-release.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 40 months in custody, followed by three years of supervised release.

Dated: September 30, 2026

Respectfully submitted,

CRAIG H, MISSAKIAN
United States Attorney

By: _________/s/________________
ZACHARY M. GLIMCHER
Special Assistant United States Attorney